IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIBOR SEBESTYEN,

      Plaintiff,

                                  Civil Action 2:17-cv-550
                                  Judge Michael H. Watson
      v.                            Magistrate Judge Elizabeth P. Deavers

DR. JOHN GARDNER, *et al.*,

      Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, Tibor Sebestyen, currently incarcerated in the London Correctional Institution, proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act. (ECF No. 26.) Following the Court's previous rulings, Plaintiff is proceeding on his remaining claims as set forth in his Amended Complaint against Defendants Higginbothim, Dr. John Gardner, Mrs. Murphy and Mrs. Popovich. This matter is before the Court for consideration of Defendants' Motion for Summary Judgment. (ECF No. 61.) Plaintiff has filed a response (ECF No. 69.) Defendants have not filed a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT** Defendants' Motion for Summary Judgment.

## I.      BACKGROUND

On July 7, 2017, Plaintiff was granted leave to proceed *in forma pauperis* in this action. (ECF No. 3.) Thereafter, the Undersigned recommended that Plaintiff's claims against ODRC, Defendants Charlotte Jenkins, C.O. Long, J. Noble, and Mr. Ferrell, and the claims for money

1

damages against the remaining Individual Defendants in their official capacities be dismissed for failure to state a claim and that Plaintiff be allowed to proceed on his remaining claims. (ECF No. 8.) Plaintiff objected to that recommendation. (ECF No. 11.) The Court overruled Plaintiff's objections and adopted the Report and Recommendation. (ECF No. 15.) Plaintiff moved to reconsider, ECF No. 17, which the Court granted in part and denied in part. (ECF No. 18.) Specifically, the Court granted Plaintiff leave to file a comprehensive, stand-alone Amended Complaint to include all the allegations against Defendants he wished to pursue in this action. (*Id.* at 2.) Thereafter, Plaintiff filed the Amended Complaint. (ECF No. 26.)[1] Defendants moved to dismiss this action, or, in the alternative, moved for summary judgment on Plaintiff's claims. (ECF No. 40.)

By Opinion and Order dated March 24, 2020 (ECF No. 53), the Court treated Defendants' motion as a request for summary judgment under Rule 56, granting it in part and denying it in part. Specifically, the Court granted Defendants' motion and dismissed the following claims: Plaintiff's claims for monetary damages against Defendants in their official capacity and Plaintiff's claims against Defendants Noble, Jenkins, Stanforth, Blackwell, Long, Ferrell, and Miller. The Court denied without prejudice Defendants' motion as to Plaintiff's remaining claims, namely, Plaintiff's claim for deliberate indifference against Defendant Higginbothim and Plaintiff's claims for deliberate indifference and violation of the ADA against Defendants Murphy, Gardner, and Popovich.

---

[1] Although the Amended Complaint did not allege jurisdiction or affirmatively assert claims for relief, the Court, construing the allegations liberally, understood the allegations as sufficient to invoke subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and presumed Plaintiff intended to seek the monetary damages and non-monetary relief asserted in the original Complaint. (ECF No. 27, at 2.) While the Court specifically provided the parties an opportunity to file an objection or motion to reconsider, *see id.* at 2–3, no party objected to or asked the Court to reconsider this interpretation of the Amended Complaint. (ECF No. 28.)

On December 20, 2020, Defendants filed their current motion for summary judgment, (ECF No. 61), raising the same issues previously considered by the Court. Plaintiff again opposes the motion. The Court addresses the parties' arguments in turn.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001)); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.' " *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,' ... there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III. ANALYSIS

### A.     Eleventh Amendment Immunity

Defendants initially move for summary judgment on the basis of Eleventh Amendment immunity.  The Court addressed this issue previously, concluding specifically as follows:

> Defendants argue that the Eleventh Amendment bars any claim—whether for monetary or non-monetary relief—against the Defendants in their official capacities.  Defendants' Mot., ECF No. 40 at 5–6.  Defendants are correct that, to the extent Plaintiff seeks monetary damages against them in their official capacities, the Eleventh Amendment bars those claims.  *See Kentucky v. Graham, 473 U.S. 159, 166* (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016) (finding that immunity applies to state officials sued in their official capacity for money damages because "'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' *i.e.*, against the state itself") (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

> However, Defendants are mistaken to the extent that they argue that the Eleventh Amendment bars any injunctive claims against them in their official capacities. Defendants' Mot., ECF No. 40 at 5 (citing *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 152 (6th Cir. 1995)).   Defendants apparently overlook that *Cox* specifically explains that while the Eleventh Amendment "bars all suits, whether for injunctive or monetary relief, against the state and its departments" and "bars suits seeking monetary damages against individuals in their official capacities," it "does *not* preclude suits seeking prospective injunctive or declaratory relief against state officials." *Cox*, 53 F.3d at 152 n.5 (emphasis added).  Accordingly, any claims

for prospective injunctive relief against Defendants in their official capacities are not barred by the Eleventh Amendment. *Id.*; *see also Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) ("The exception set forth in *Ex Parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations.").

(ECF No. 53, at 6-7.) Nothing in Defendants' current summary judgment motion changes the above analysis as it relates to Plaintiff's § 1983 claims. The Court, however, will address the issue of Eleventh Amendment immunity as now directed by Defendants to Plaintiff's ADA Title II claim.

As an initial matter, Plaintiff may not maintain an action under the ADA against individual defendants in their individual capacities." *Maurer v. Lincoln Mem'l Univ.,* No. 3:20-CV-395, 2021 WL 136016, at *4 (E.D. Tenn. Jan. 13, 2021) (citing *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004)). However, the Sixth Circuit has held that the Eleventh Amendment does not bar an ADA Title II claim for prospective relief against state officials in their official capacities. *Bowie v. Hamilton Cty. Juv. Ct.,* No. 1:18-CV-395, 2019 WL 1305864, at *4 (S.D. Ohio Mar. 22, 2019) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002)).

Further, of course, when state officials are sued in their official capacities, "for all intents and purposes," the state is "the real party-in-interest." *Mingus v. Butler,* 591 F.3d 474, 482 (6th Cir. 2010). Although Congress expressed a desire in the provisions of the ADA to abrogate Eleventh Amendment immunity for violations of the ADA, *see* 42 U.S.C. § 12202, the Supreme Court has held the attempt at abrogation is valid only in limited circumstances, and turns on the nature of the ADA claim at issue. *Ward v. Tennessee Dep't of Educ.,* No. 3:19-CV-00218, 2020 WL 1814194, at *2 (M.D. Tenn. Apr. 9, 2020) (citing *Board of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 367-68 (2001)).

In evaluating whether abrogation is valid for particular Title II ADA claims, the Court of Appeals for the Sixth Circuit applies a three-part test derived from the Supreme Court's holding in *United States v. Georgia*, 546 U.S. 151 (2006). This test requires a court to: "'determine...on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" *Ward,* 2020 WL 1814194, at *2 (citing *Mingus,* 591 F.3d at 482). However, the constitutional question-- abrogation of Eleventh Amendment immunity-- is to be reached only after finding a viable claim under Title II. *Haas v. Quest Recovery Servs., Inc.,* 247 F. App'x 670, 672 (6th Cir. 2007) (citing *Georgia,* 546 U.S. at 159).

Because, as set forth in more detail below, the Plaintiff has failed to state a claim under Title II of the ADA in the Amended Complaint, the Court need not address the issue of abrogation further. *See Haas*, 247 F. App'x at 672 (declining to undertake full *Georgia* analysis where Title II claim failed under the first prong because the amended complaint did not state a valid claim). However, because the Court previously has construed the Amended Complaint as seeking non-monetary relief against Defendants in their official capacities, dismissal of Plaintiff's ADA claim in its entirety on the basis of Eleventh Amendment immunity is not warranted. (ECF No. 27, at 2)

**B.    Qualified Immunity**

Defendants also contend that the Court should dismiss the Amended Complaint because they are entitled to qualified immunity on all claims. (ECF No. 61, at 4–5.)

The Court previously addressed Defendants' qualified immunity argument in this way:

After defining qualified immunity and reciting the relevant law, Defendants' argument in toto is as follows: "Plaintiff has failed to establish any conduct that could rise to a Constitutional violation. Instead, Plaintiff alleges nothing beyond mere negligence. As such, Defendants are entitled to qualified immunity and Plaintiff's Amended Complaint should be dismissed." *Id*. at 5. However, "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *Faith Baptist Church v. Waterford Twp*., 522 F. App'x 322, 328 (6th Cir. 2013) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (citations omitted). "[Q]ualified immunity for damages in his individual capacity is a mixed question of law and fact. . . . [and a] bare recitation of the legal standard and the elements necessary to meet it is insufficient to trigger review of a mixed question." *Id*.; *see also Pettry v. City of Parma*, No. 1:14-cv-01667, 2015 WL 5437772, at *2 (N.D. Ohio Sept. 15, 2015) ("Defendants do cite some boilerplate law concerning qualified immunity, but fail to set forth a meaningful analysis of how it applies to the case at bar."). For these reasons, Defendants have not established that they are entitled to qualified immunity on Plaintiff's claims.

(ECF No. 53, at 8.)

This time around, despite the Court's previous admonition, the only substantive change to

Defendants' argument is the addition of the following prefatory sentence:

> Here, it was reasonable for Defendants to rely on medical expertise in providing plaintiff with contact solution in the amount prescribed by his doctor, and following the alternative care plan put forth by the DRC Collegial Review Committee. (Exhibit A at pp. 78-80); (Exhibit B, p.1).

(ECF No. 16, at 14.) This minimal revision does not alter the above analysis. Accordingly,

Defendants have not established that they are entitled to qualified immunity on Plaintiff's claims.

### C. PLRA Exhaustion

Defendants also argue once again that Plaintiff has failed to properly satisfy the

exhaustion requirements set forth in the Prison Litigation Reform Act of 1996 ("PLRA"), 42

U.S.C. § 1997e(a). The Court previously rejected this argument noting that Defendants'

evidence provided "no details into the nature of each complaint, grievance, or appeal" and that

"Defendants fail to provide any explanation or citation to any information in Exhibit C,

apparently expecting the Court to examine and piece together multiple entries to determine which, if any claims, Plaintiff has exhausted." (ECF No. 53, at 14.) The Court also noted that "[w]hile Plaintiff insists that he exhausted his administrative remedies as to eleven complaints, the Court is similarly unable to discern from his evidence which, if any claims, have been exhausted." (*Id*. at n.4.)

The circumstances of the current motion remain as the Court previously described with two exceptions – Defendants concede that Plaintiff exhausted grievances regarding not having received an adequate supply of contact solution and the cancellation of his trip to FMC to be fitted for new contacts. (ECF No. 61, at 18.) Again, however, the overall state of the record continues to prevent the Court from meaningfully considering the exhaustion issue and Defendants' motion will not be granted on this ground.

### D. Deliberate Indifference and ADA Claims Against the Remaining Individual Defendants

#### 1. Factual Background

The following facts, construed in the light most favorable to Plaintiff, are taken from Plaintiff's medical records as submitted by Defendants.[2] These records, as relevant here to Plaintiff's current claims, relate to Plaintiff's time at both CCI and LoCI and reveal the following.

---

[2]Plaintiff's medical records total 80 pages and are accompanied by an affidavit from Defendant Roberta Murphy, the Healthcare Administrator at LoCI attesting that the record is a true and accurate copy of the original retained by ODRC as kept in the ordinary course of its regularly conducted business activities. (ECF No. 61-2, at ¶¶ 5-6; ECF Nos. 61-3; 61-4.) In denying without prejudice Defendants' earlier motion for summary judgment, the Court relied on Plaintiff's representation that he did not have access to his medical file. In responding to Defendants' current motion, however, it is clear that, despite his continued assertions that he did not have such access, he has relied on his medical records as submitted by Defendants. *See* ECF No. 69-1, at 1-4.)

Plaintiff began an on-going course of treatment following a diagnosis of "irregular astigmatism s/p RK" from the Department of Ophthalmology at The Ohio State University Wexner Medical Center on November 10, 2015, while Plaintiff was incarcerated in CCI.  (ECF No. 61-3, at 2-5.)  Plaintiff was seen at OSU following a consultation request from CCI's referring physician.  (*Id.* at 1.)  Following this diagnosis, an alternate plan of care was developed.  (*Id.* 6.)  While at CCI, Plaintiff was seen by Dr. Miller, OD, for eye exams on June 7, 2016; September 15, 2016; October 13, 2016; and November 10, 2016.  (*Id*. at 10, 21, 32, 35.)

Plaintiff was seen by OSU Eye Physician and Surgeons, LLC on July 19, 2016. (*Id*. at 14.)  He was fitted for special contacts which he received on August 9, 2016.  (*Id*. at 15, 17.)  On September 4, 2016, Plaintiff requested a refill of his contact solution which request was forwarded to the pharmacy on September 7, 2016.  (*Id*. at 18, 19.)  When seen by Dr. Miller on September 15, 2016, Plaintiff complained that he had not received contact solution, reported that it only lasted two weeks, and Dr. Miller's disposition in his progress note states "reorder RGP CL cleaning soln and conditioner."  (*Id*. at 21-22.)  The disposition further states, "Refer back to FMC to modify fit of RGP."  (*Id*. at 22.)  Dr. Miller placed an order for contact cleaner, soaking/conditioning soln with instructions to use as directed."  (*Id*. at 80.)

The referral appointment request initially was not approved and an alternative plan of care was recommended requiring Plaintiff to use his "spectacles."  (*Id*. at 24.)  Days later, however, the request was approved.  (*Id*. at 27.)  Plaintiff was seen again at OSU Eye Physicians and Surgeons LLC on October 11, 2016, and new contacts were ordered.  (*Id*. at 28, 31, 32.)  Plaintiff received his new contacts on October 26, 2016.  (*Id*. at 34.)

When seen by Dr. Miller on November 10, 2016, Plaintiff complained that his latest

contacts "ride up higher than last ones and don't fit." (*Id*. at 35.) Dr. Miller's progress note from that day includes the following disposition: "Refer to FMC for CL evaluation, consider transferring pt (when level appropriate) to LOCI where they house lower vision people and have vision vocational services." (*Id*. at 36.)

After Plaintiff was transferred to LoCI, Plaintiff was again seen by Dr. Miller on January 17, 2017. (*Id*. at 42.) Dr. Miller's progress note from that day contains the following disposition: "Per HCA: Ordered RGP CL Cleaner and Conditioning sln for 90 days then pt is liable for the cost of them. Refer to FMC (Dr. McLaughlin) for redesign of RGP CL (third time). (*Id*. at 43, 79.) Dr. Miller's ordered "one bottle each/month x 3 months." (*Id.* at 79

A record dated February 2, 2017 states: "Hold on ophthalmology consult until vision is measured with glasses per collegial review." (*Id*. at 45.) An AltCarePlan report dated February 16, 2017, states: APPOINTMENT NOT APPROVED: not needed has contacts - "DSC TO RE-EVALUATE CONDITION." (*Id.* at 46; ECF No. 61-4, at 1.) This is confirmed by a telephone encounter record indicating that "per CR alternative therapy, no ophthalmology referral." (ECF No. 61-3, at 47.) Progress notes dated March 8, 2017 state, in part, that "Patient informed of Collegial Review Board's decision concerning Ophthalmology referral. Alternate care plan recommended. Patient unhappy with decision, threatening to file informal complaints." (*Id.* at 48.)

On March 17, 2017, Plaintiff was provided "several contact solutions and instructions on how to use them. – Boston Advance- condition solution-Boston Sim plus-multi-action solution-One Step Liquid Ensymatic Cleaner – 3 different bottles of various sizes – Rewetting Drops 6 bottles total." (*Id*. at 53.) Further, he was "[i]nformed [by Defendant Murphy] of HCA going through CPIP to obtain solution. Is special order. Commissary is also going through same

person to obtain. Pt. is not indigent and should be able to purchase, depending on final price. This will be kept in consideration if commissary is able to obtain." (*Id.*)

On April 12, 2017, Plaintiff requested an FMC Ophthalmology Consult. (*Id*. at 56.) This request was not approved in favor of alternative care plan where DSC would re-evaluate Plaintiff's condition. (*Id.* at 57.) On April 26, 2017, Plaintiff was seen for an appointment complaining that he "needs DSC f/u to discuss APOC from CR" and reporting that "he has no more lens cleaner." (*Id.* at 58.) On June 13, 2017, Plaintiff was seen by Dr. Miller for an eye exam. Dr. Miller progress note reflects the following disposition: "D/T APOC for RGP refit need to order MF lenses in PT's glasses 1608." (*Id*. at 65.)

Summaries of service dated March 6, 2017 and April 26, 2017, from Sarah Yoest and Karen Gansl state the following:

> Mr. Tibor is a contact lens wearer. He has an irregular cornea which makes glasses inaccurate and unable to correct his vision. He has hard gas permeable contact lenses but has not had access to the contact lens solutions he needs to maintain them. He needs Boston solutions and they are not available at the commissary. He was having his solutions medically supplied at Chillicothe, but was transferred and the solutions did not follow with him. He is unable to see without his contacts, can not clean and soak them overnight and so has been wearing them around the clock for months. He needs his solutions. Today he was able to see 20/120 with his contacts in, but insists his vision is much better with clean lenses. Without lenses, Dr. Miller noted his acuity to be 20/200.

(*Id*. at 69.)

> Mr. Tibor has hard gas permeable contact lenses. He was provided with Boston solutions. He has had them for weeks and although his lenses are now clean, they are still very irritating and he can only wear them for an hour or two. However, he sees much better now that his corneas are not compromised. He has an old pair of bifocals. They need to be updated and we would recommend that he see Dr. Miller. Although we were not in the infirmary to test his acuity, he was able to read standard print without glasses with effort. He reports that distance is blurry. He does not need the magnifier now. He would like contacts, but Dr. Miller can determine if contacts are medically necessary. Glasses may suffice.

(*Id*. at 70.)

### 2. ADA Claim

As confirmed in the Court's previous Opinion and Order, Plaintiff's ADA claim is directed to Defendants Murphy, Gardner, and Popovich only.  The allegations with respect to each of these Defendants include the following.   With respect to Mrs. Murphy, Plaintiff asserts that he "strongly feel[s] that Mrs. Murphy has shown complete discrimination toward the Disabled, she has harassed [him], she has failed to provide [him] with proper medical care."  (ECF No. 26, at 6.)  Plaintiff's allegations directed to Dr. Gardner state that he "violated his oath as a Doctor, he violated [Plaintiff's] Rights, he discriminated against a disabled person, he abused his authority and his power."  (*Id*. at 9.)  As for Mrs. Popovich, Plaintiff alleges that Defendant Mrs. Popovich, who is in charge of LoCI's "Blind Program," refused his admission to that program and discriminated against him in violation of his ADA rights.  (*Id.* at 10-11.)  Plaintiff alleges that he has "documentation against Mrs. Popovich for Discrimination; violation of [his] ADA Rights, Abuse of Authority and Power.  Retaliation on an Inmate with a disability."  (*Id*. at 10.)

To the extent Plaintiff purports to sue under Title II of the ADA, that statute provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132.

> The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

*Id.* § 12131(2). The term "public entity" includes "any State ... government" and "any department, agency, special purpose district, or other instrumentality of a State[.]" *Id.* § 12131(1)(A)-(B).

Thus, to prove a violation of Title II, the plaintiff must show: "[1] that he is a 'qualified individual with a disability,' [2] that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was 'by reason of' his disability." *Meeks v. Schofield*, 10 F. Supp. 3d 774, 792 (M.D. Tenn. 2014), *aff'd*, 625 F. App'x 697 (6th Cir. 2015). With respect to the third prong, a plaintiff must allege, among other things, "a causal relationship between his disability and Defendants' alleged discriminatory conduct." *Daniels v. Leslie*, 2018 WL 3216240, at *4 (E.D. Mich. July 2, 2018). That is, a plaintiff must plead, and ultimately establish, that "the defendant took action *because of* the plaintiff's disability, *i.e.*, the plaintiff must [plead and] present evidence that *animus* against the protected group was a *significant factor* [in the defendant's conduct]." *Id.* (emphasis in original) (citing *Smith v. City of Troy, Ohio*, 874 F.3d 938 (6th Cir. 2017)); *see also Parker by Parker v. City of Highland Park*, 437 F. Supp. 3d 609, 620–21 (E.D. Mich. 2020) (citing *Daniels* in finding that Plaintiff failed to state an ADA Title II claim because he did not allege any facts tending to establish alleged action was taken because of his disability or was a significant factor, he alleged only defendants' awareness of his condition).

The Supreme Court has held that Title II of the ADA applies to prisoners housed in state prisons. *Pennsylvania v. Yeskey*, 524 U.S. 206, 213 (1998). Thus, Title II applies to claims that an inmate has been denied the benefit of, or excluded from participation in, "recreational

activities, medical services, and educational and vocational programs." *Id.* at 210 (internal quotation marks omitted).

In moving for summary judgment, Defendants again argue, in part, Plaintiff's failure to exhaust any ADA claim. For the reasons set forth above, that argument remains unavailing. More substantively, Defendants argue that Plaintiff fails to meet any prong of an ADA Title II claim. In response, Plaintiff contends that his vision impairment meets the disability definition and that his transfer to a vision impaired facility confirms this. Further, Plaintiff argues that he is "otherwise qualified" for participation in activities, services and programs, again as evidenced by his transfer to such a facility. Finally, Plaintiff contends that he has satisfied the causation prong by demonstrating that the necessary contact solution was not available for purchase in the commissary.

Plaintiff's ADA claims against these Defendants fail for several reasons. First, his allegations of an ADA Title II violation, including specifically any allegations of discrimination, are wholly conclusory and, as presented, are simply insufficient to raise a genuine issue of material fact. That is, "'a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment.'" *Emery v. Kory*, No. 2:19-CV-11419, 2020 WL 6121483, at *2 (E.D. Mich. Sept. 22, 2020), *report and recommendation adopted,* No. 19-11419, 2020 WL 6118485 (E.D. Mich. Oct. 16, 2020) (quoting *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995)). As one court has explained:

> The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, ... 'the liberal pleading standards under *Swierkiewicz [v. Sorema N.A.*, 534 U.S. 506, 512-13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382

F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

*Glenn v. Corizon Healthcare, Inc.*, No. 2:17-CV-10972, 2019 WL 5800083, at *3 (E.D. Mich. July 8, 2019), *report and recommendation adopted*, No. 17-10972, 2019 WL 4565115 (E.D. Mich. Sept. 20, 2019).

Moreover, assuming without deciding that Plaintiff's vision impairment constitutes a disability, he fails to identify the specific services or programs in which his participation was denied as a result of this impairment. Plaintiff does not dispute his receipt of medical services for his vision impairment. Rather, Plaintiff's ADA claim arises from his belief that he was not provided proper medical care in certain instances relating to his vision impairment. Such a claim ordinarily is not actionable under Title II of the ADA. *Watson v. Mohr*, No. 2:17-CV-457, 2017 WL 6383812, at *5 (S.D. Ohio Dec. 14, 2017), *report and recommendation adopted,* No. 2:17-CV-457, 2018 WL 836484 (S.D. Ohio Feb. 13, 2018); *see also Royster v. Mohr*, No. 11-CV-1163, 2013 WL 827709, at *9 (S.D. Ohio Mar. 6, 2013), *report and recommendation adopted*, No. 2:11-CV-1163, 2013 WL 2404065 (S.D. Ohio May 31, 2013) (citing *Baldridge–El v. Gundy,* No. 99–2387, 2000 WL 1721014, at *2 (6th Cir. Nov.8, 2000) ("medical treatment decisions, or alleged medical malpractice, cannot form the basis of a claim under the ADA").

Plaintiff's most serious allegation appears to be directed to Mrs. Popovich to the extent he states that she refused his admission to the "Blind Program" and somehow retaliated against him. This allegation, however, is wholly devoid of any information sufficient to raise a genuine issue of material fact. To the extent that Plaintiff asserts a reason for the alleged denial of

participation in this program, he states that "[s]he believes I can see just fine" and "[s]he doesn't like me and she's not putting me in the Blind-Program no matter what." (ECF No. 26, at 10.) Neither of these statements suggests that Mrs. Popovich denied Plaintiff participation in this program because of his alleged vision impairment. Moreover, the ADA's anti-retaliation provision, to the extent applicable to Plaintiff in the context of this action, provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203. Plaintiff makes no such allegations addressing these elements of a retaliation claim. Accordingly, he has failed to raise any genuine issue of material fact on his claim of retaliation as well. *Meeks*, 10 F. Supp. 3d at 792.

### 3. 42 U.S.C. § 1983 Claim

As the Court explained in its prior Opinion and Order, Plaintiff's allegations, construed liberally, also appear to assert a claim for deliberate indifference under the Eighth Amendment to the United States Constitution with respect to Defendants Higginbothim, Gardner, Murphy, and Popovich. These allegations include the following. Defendant B. Higginbothim, CCI's healthcare administrator, failed to provide Plaintiff medical care. (ECF No. 26, at 3-4.) Plaintiff specifically alleges that, *inter alia*, Defendant Higginbothim refused to provide him with contact cleaner and disinfectant solution after Defendant Dr. Miller ordered these items. *Id*. Plaintiff also alleges that Defendant Higginbothim transferred Plaintiff to LoCI without first obtaining a medical exam by a physician and securing a physician's recommendation in violation of ODRC's policies. *Id*. With respect to Defendant Murphy, Plaintiff alleges that she apparently disregarded his health. Plaintiff specifically alleges that Defendant Murphy was an obstacle

when Plaintiff attempted to obtain the required amount of contact solution. (*Id.* at 5-6.)

Plaintiff's allegations directed to Defendant Popovich are the same as those relating to the

alleged ADA Title II violation. Finally, as to Defendant Dr. Gardner, ODRC's Chief Medical

Officer, Plaintiff alleges that Dr. Gardner refused to permit him to go to an outside eye clinic,

The Ohio State University eye clinic, despite multiple requests by other doctors, including Dr.

Miller. (*Id.* at 9.)

42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted

under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or

immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S.

527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir. 1983), *rev'd and remanded sub*

*nom. Brandon v. Holt*, 469 U.S. 464 (1985). As a general rule, a plaintiff proceeding under §

1983 must allege that the deprivation of rights was intentional or at least the result of gross

negligence. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Mere negligence is not actionable

under § 1983. *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

It is well established that "[t]he Eighth Amendment forbids prison officials from

unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference

toward [his or her] serious medical needs." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th

Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has

both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir.

2011). The United States Court of Appeals for the Sixth Circuit has explained as follows:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011). Where the risk of serious harm is

obvious, it can be inferred that the defendants had knowledge of the risk. *Farmer v. Brennan*, 511

U.S. 825, 842 (1994). The Sixth Circuit has also noted that in the context of deliberate indifference

claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Along similar lines,

"[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med.*

*Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Rather, the Sixth Circuit considers the

subjective component to be satisfied where defendants recklessly disregard a substantial risk to a

plaintiff's health. *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012). Furthermore, "a

difference of opinion between [a prisoner] and the prison health care providers and a dispute

over the adequacy of [a prisoner's] treatment ... does not amount to an Eighth Amendment

claim." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

Plaintiffs must satisfy both the objective and subjective components to adequately state a claim for deliberate indifference. As explained above, the objective component mandates that a plaintiff demonstrate a "sufficiently serious" medical need, "which is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (internal citations omitted).

Here, there does not appear to be any dispute that Plaintiff meets the objective component of a deliberate indifference claim. Rather, Defendants' arguments appear directed solely to the subjective component. (ECF No. 61, at 19-21.) First, they assert that Plaintiff has failed to evaluate their individual knowledge. Further, they argue that, at most, Plaintiff has alleged negligent treatment. Finally, they rely on *Rhinehart v. Scutt*, 894 F.3d 721, 727 (6th Cir. 2018) in arguing that, because Plaintiff received on-going treatment for his vision condition, he is required to demonstrate that this treatment was "so cursory as to amount to no treatment at all" or "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness" and has failed to do so. *Id.*

Plaintiff's Response sets forth the following argument, restated here, with limited exception,[3] verbatim:

> Deliberate Indifference. Defendants knew of the pain that the contacts were causing. The medical files show that Dr. Miller has submitted in the record that the contacts do not stay centered and do not fit the shape of my eyes and cause great pain. Also plaintiff has submitted the actual insert and manufactures instructions that plainly show that 1 bottle of solution will only last about 2 weeks. Plaintiffs medical record shows that the eye doctor at FMC placed an order for contact solution as needed but Mrs Murphy claimed that that order was unclear and instead of confirming the order modified it herself to only 1 bottle a month. Popovich was, in direct violation of HIPPA rules, present in all plaintiffs meeting with Dr Youst while I was being examined and popovich had first hand knowledge of the plaintiffs

---

[3] The Court has omitted what appear to duplicate sentences or sentence fragments.

medical condition.  As the defendants clearly show in this section, inmate medical files are not public records.  ODRC policy, 07-ORD-11(F)(a) also state no copies of the HER maybe made for the inmate.  Defendants claim that because 1 bottle of contact solution per month was given per month this is no deliberate indifference but as the medical record actually shows, but plaintiff cannot get a copy of and had had the prescribing doctor and Dr Miller read to the plaintiff that the solution is to be given as needed.  This solution is not only to clean the contacts but also to disinfect.  Did Medical expect Plaintiff to continue to insert contaminated contacts into his eyes and risk infection?  This is clearly Deliberate indifferent.  The defendants also claim that contact solution was available on the commissary but as I have submitted in the record the proper solution for hard contacts was not sold at the commissary at either London or Chillicothy and was only available through medical.  The original order from OSU's Opthalmology doctor specifically ordered special scleral contacts and that order was not followed but instead regular contacts were issued that will not fit the odd shaped serfice of the plaintiffs eyes.  This is also in the medical file but the plaintiff can not get copy.

(ECF No. 69 at 2.)

As with Plaintiff's ADA claim, Plaintiff's claims of deliberate indifference fail for several reasons.  First, Plaintiff offers nothing but conclusory statements in support of his claims.  Such conclusory statements are insufficient to demonstrate that any of these Defendants knew of and recklessly disregarded an excessive risk to his health or safety, including specifically his vision issues.  That is, even accepting as true Plaintiff's specific allegations that he was denied sufficient contact solution and refused a recommended referral to an outside eye clinic,[4] Plaintiff has failed to demonstrate that these denials posed an excessive risk of harm to his vision, that these specific Defendants were aware of the excessive risk and that they disregarded that risk as

---

[4] Plaintiff insists that he has provided evidence in the record demonstrating that one bottle of solution will only last two weeks.  It appears that Plaintiff may be referring to a document attached to his original complaint.  *See* ECF No. 4-1 at 29.  This illegible copy of what Plaintiff describes as "the actual insert and manufactures instructions" does not bolster Plaintiff's claim or change the Court's analysis here.  Similarly, Plaintiff's exhibit submitted in support of his current Response sheds no light on his contention that his required type of contact solution was unavailable for purchase in the Commissary.  *See* ECF No.69-1 at 35 (indicating, without specificity, the availability of contact solution for purchase.)    However, as set forth above, there is some indication in Plaintiff's medical records that his contact solution was a special order item not readily available in the Commissary.

required to support a claim of deliberate indifference. Again, Plaintiff's bald assertion of deliberate indifference, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *Emery*, 2020 WL 6121483, at *2; *Glenn,* 2019 WL 5800083, at *3

Further, Plaintiff's claims of deliberate indifference simply are inconsistent with the information contained in his medical records. This certainly is not a situation where a Plaintiff has been denied care for a serious medical need. Rather, Plaintiff's medical records demonstrate consistent and on-going care for his vision issues during his time at both CCI and LoCI. As set forth above, this care included multiple eye appointments with Dr. Miller, Dr. Miller's prescription of one bottle of contact solutions per month, referrals to outside providers, multiple refills of his contact solutions, and the implementation of alternative plans of care in lieu of certain recommendations. Plaintiff has not come forward with any evidence demonstrating that this course of treatment could be considered "so cursory as to amount to no treatment at all" or "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." *Rhinehart,* 894 F.3d at 727.

At best, Plaintiff's claim fairly can be characterized as resting on nothing more than his disagreement with the sufficiency of the amount of contact solutions either as prescribed or provided and with the decision to follow an alternate plan of care rather than pursue a specific referral made by Dr. Miller. However, as the above authority confirms, "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment ... does not amount to an Eighth Amendment claim." *Apanovitch,* 32 F. App'x at 707.

Finally, any claim based on Plaintiff's allegation that Defendant Higginbothim violated ODRC's policies when she transferred him to LoCI without first obtaining a medical exam by a physician and securing a physician's recommendation cannot succeed. "An alleged failure to comply with a state law, prison rule, or regulation, standing alone, does not state a claim under § 1983." *Harrison v. Crick,* No. 5:19-CV-P75-TBR, 2019 WL 4345987, at *5 (W.D. Ky. Sept. 12, 2019), *reconsideration denied,* No. 5:19-CV-P75-TBR, 2020 WL 544701 (W.D. Ky. Feb. 3, 2020) (citing *Bradbury v. Hammond*, No. 2:13-CV-13376, 2013 WL 4521117, at *2 (E.D. Mich. Aug. 27, 2013) (citing cases)). Moreover, Plaintiff's allegation is not supported by the evidence summarized in detail above. As set forth above, Dr. Miller's progress note dated November 10, 2016, states that a transfer to "LoCI where they house lower vision people and have vision vocational services" should be considered "when level appropriate." (ECF No. 61-3, at 36.) Further, there is no indication in these records that Defendant Higginbothim had any role in Plaintiff's transfer to LoCI. Rather, the Medical Re-Classification form attached as support for the transfer request was signed by Dr. Gardner and the transfer request itself was signed by the Warden. (*Id.* at 76, 77.) Importantly, Plaintiff has provided no evidence to the contrary.

## IV. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that the Court **GRANT** Defendants' Motion for Summary Judgment. (ECF No. 61.)

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal...." (citation omitted)).

Dated:  May 12, 2021                         s/ *Elizabeth A. Preston Deavers*
                                             **ELIZABETH A. PRESTON DEAVERS**
                                             **UNITED STATES MAGISTRATE JUDGE**